**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ELLEN THOMPSON, *et al.*, *on behalf of herself* *
*and all others similarly situated*,
*
*Plaintiffs*,
*
v. Civil Action No. RDB-26-1800
*
ASHLEY STEWART, INC., *et al.*,
*
*Defendants*.
*
* * * * * * * * * * * * *

**MEMORANDUM ORDER**

In this putative class action, Plaintiffs Ellen Thompson and Tina Turner (collectively, "Plaintiffs") allege that Defendants Ashley Stewart, Inc. ("Ashley Stewart"), Kinbow LLC ("Kinbow"), and G Ashley, Inc. ("G Ashley") (collectively, "Defendants"), sent them and putative class members false and misleading marketing emails in violation of Maryland law. *See* (ECF No. 9).[1] This action is yet another among a group of nearly identical cases filed in this Court.[2]

Ms. Thompson and Ms. Turner initiated this action on December 22, 2025, by filing a Class Action Complaint and Demand for Jury Trial in the Circuit Court for Baltimore City,

[1] Plaintiffs' Complaint appears on the docket at both ECF No. 1-1 and ECF No. 9. For clarity and consistency, the Court cites to the Complaint only at ECF No. 9.
[2] In addition to *Cowan v. Williams-Sonoma Stores, Inc.*, No. RDB-26-3073, 2026 WL 2945164 (D. Md. Oct. 1, 2026), *Dent v. Beis, LLC*, No. RDB-26-01170, ECF No. 38 (D. Md. Nov. 10, 2026); *Rossy v. Beis, LLC*, No. RDB-26-2119, ECF No. 28 (D. Md. Sep. 3, 2026), *LaTouche v. True Religion Apparel, Inc.*, No. RDB-26-00914, 2026 WL 2221402 (D. Md. Aug. 3, 2026), and *Crooks v. Coty DTC Holdings, LLC*, No. RDB-26-0078, 2026 WL 1265422 (D. Md. May 8, 2026), all filed before the undersigned, the following cases presenting essentially identical issues have appeared before other judges in this district: *Carter v. Vineyard Vines, LLC*, No. ELH-25-3178, 2026 WL 1429258 (D. Md. May 21, 2026); *Smith v. Lane Bryant Brands Opco LLC*, No. SAG-25-3766, 2026 WL 1745684 (D. Md. Jun. 17, 2026); *Mulanena v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. JRR-25-3753, 2026 WL 1214932 (D. Md. May 4, 2026).

Maryland. *See* (ECF No. 1-1 at 50–66). On April 1, 2026, Plaintiffs filed their First Amended Class Action Complaint and Demand for Jury Trial in the Circuit Court for Baltimore City ("Complaint"). (ECF No. 9). The primary count alleges Defendants violated Maryland's Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COM. LAW §§ 14-3001 *et seq.* (Count I). (*Id.* ¶¶ 77–83). Based on these alleged violations and "[t]he balance of the equities," Plaintiffs request permanent injunctive relief (Count II). (*Id.* ¶¶ 84–88). On behalf of the putative class, Plaintiffs also seek declaratory relief; an order restraining Defendants from "altering, deleting or destroying" certain documents; statutory damages of $500 per violation of MCEMA; and reasonable attorneys' fees and costs. (*Id.* ¶¶ A–I). On May 6, 2026, Defendants removed the action to this Court pursuant to L.R. 103.5 and 28 U.S.C. §§ 1441 and 1446, asserting diversity jurisdiction under 28 U.S.C. § 1332(a) and the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d).[3] (ECF No. 1).

Presently pending before the Court is Defendant G Ashley's Motion to Dismiss ("Motion to Dismiss") (ECF No. 14; ECF No. 14-1) Plaintiffs' Complaint (ECF No. 9). G Ashley asserts that because Plaintiffs "cho[se] to provide Defendants their email addresses" to participate in Defendants' rewards programs, "the emails were not unsolicited or unexpected." (ECF No. 14-1 at 7–8). Additionally, G Ashley argues that Plaintiffs failed to plausibly allege that Defendants' email subject lines "contained false or misleading information that has the capacity, tendency, or effect of deceiving consumers" in violation of MCEMA.[4]

---

[3] This Court has diversity jurisdiction over this matter under CAFA, 28 U.S.C. §§ 1332(d), which authorizes diversity jurisdiction in matters in which there are at least 100 members in the putative class, the amount in controversy exceeds $5 million, and at least one plaintiff is diverse from at least one defendant. *See* (ECF No. 1 at 2–3 (asserting CAFA jurisdiction)).

[4] G Ashley further suggests that "[c]onsent is a valid defense against an MCEMA claim[,]" and that MCEMA was not intended to regulate the Defendants' email subject lines because they "accurately represented"

(ECF No. 14-1 at 10). Plaintiffs subsequently filed an Opposition to Defendant G Ashley's Motion to Dismiss ("Plaintiffs' Opposition") (ECF No. 17), and G Ashley replied in support of its Motion to Dismiss ("Defendant's Reply") (ECF No. 22). Finally, on October 21, 2026, Plaintiffs filed a Surreply in Opposition to G Ashley's Motion to Dismiss ("Plaintiffs' Surreply") (ECF No. 29). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

Although G Ashley did not address Article III standing in its Motion to Dismiss, Plaintiffs aptly note that "[a]s the removing party, Ashley Stewart bears the burden of proving federal jurisdiction." (ECF No. 17 at 2). Thus, whether the Plaintiffs have Article III standing is a threshold jurisdictional issue that this Court must resolve before reaching the merits of this dispute. *E.g.*, *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). For the reasons set forth below, Plaintiffs lack Article III standing such that this Court lacks subject matter jurisdiction. This case must be REMANDED to the Circuit Court for Baltimore City, Maryland, and Defendant G Ashley's Motion to Dismiss (ECF No. 14) is DENIED AS MOOT.

## BACKGROUND

Plaintiffs' claims relate to Defendants' allegedly deceptive marketing practices. Plaintiffs allege that Defendants send marketing emails with "false and misleading information in the subject lines" that "misrepresent how long Ashley Stewart is offering a sale[.]" (ECF No. 9 ¶¶ 25, 26). Specifically, Plaintiffs allege that Defendants' sales were "always planned to continue," and thus the subject lines "were false and misleading because the claimed

---

Defendants' sales. (ECF No. 14-1 at 7, 8). As subsequently explained, because Plaintiffs lack Article III standing, this Court declines to consider the merits of these arguments.

'extensions' were not in fact extensions, but planned periods for an ongoing sale." (*Id.* ¶¶ 26, 30). According to Plaintiffs, by "suggest[ing] an offer's rarity or urgency," the misleading subject lines "induc[ed] fear of missing a good buy[,]" "spurring consumers to make purchases in a hurry and thereby increasing Defendants' sales revenue." (*Id.* ¶ 2, 41).

Plaintiffs allege that the repetitive, deceptive marketing emails described above violate the Maryland Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COM. LAW §§ 14-3001 *et seq.* (Count I). *See generally* (ECF No. 9 ¶¶ 1–68). Under MCEMA, a person may not send, conspire to send, or assist another in sending commercial electronic mail[5] into or out of Maryland that contains "false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient." MD. CODE ANN., COM. LAW § 14-3002(b). MCEMA authorizes statutory damages of $500 per violation or the email recipient's actual damages, whichever is greater. *See id.* § 14-3003. Notably, although Plaintiffs have completed purchases on the Ashley Stewart website and at Ashley Stewart stores, (ECF No. 9 ¶¶ 58, 60, 65), they "do not plead that they detrimentally relied on any false or misleading subject line" when making those purchases (ECF No. 17 at 2). Plaintiffs also acknowledge that while they hold rewards accounts with Defendants "associated with [their] email address[es]," and "would like to continue receiving truthful information from Defendants regarding Ashley Stewart products and sales[,]" they "do not want to receive emails with false and misleading subject lines[.]" (ECF No. 9 ¶¶ 57, 64, 68).

[5] "[C]ommercial electronic mail" is "electronic mail that advertises real property, goods, or services for sale or lease." MD. CODE ANN., COM. LAW § 14-3001(b)(1).

On December 22, 2025, Plaintiffs filed this putative class action in the Circuit Court for Baltimore City, Maryland. (ECF No. 1-1 at 50–66). In their amended two-Count Complaint, (ECF No. 9), Plaintiffs seek declaratory, equitable, and injunctive relief "to ensure that Defendants will not continue to engage in" the alleged unlawful marketing email practices; an order prohibiting Defendants from "altering, deleting or destroying" documents that could be used to identify members of the purported class; statutory damages of $500 per violation of MCEMA; and reasonable attorneys' fees and costs. (*Id.* Request for Relief, ¶¶ A–I).

On May 6, 2026, Defendants removed the action to this Court, asserting jurisdiction based on minimal diversity under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d).[6] (ECF No. 1). On May 13, 2026, Defendant G Ashley moved to dismiss Plaintiffs' complaint (ECF No. 14), stating that the "subject lines did not have the capacity, tendency, or effect of deceiving consumers[,]" and "[n]o reasonable consumer would have been deceived by Defendants' emails[.]" (ECF No. 14-1 at 2). Plaintiffs then filed their Opposition on May 27, 2026, (ECF No. 17), arguing that their allegations against Defendants were insufficient to confer Article III standing, and that "[b]y asserting that Plaintiffs [had] suffered no concrete harm, Ashley Stewart effectively argue[d] its way out of federal court."[7] (ECF No. 17 at 2, 5). Defendant G Ashley replied on June 19, 2026, (ECF No. 22), and on October 21, 2026, Plaintiffs filed a Surreply, (ECF No. 29). In their Surreply, Plaintiffs asserted that Defendant

[6] As noted above, CAFA authorizes diversity jurisdiction in putative class actions in which (1) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, (2) any member of a class of plaintiffs is a citizen of a State different from any defendant (known as "minimal diversity"), and (3) the number of all members of all proposed plaintiff classes aggregates to one hundred or more. 28 U.S.C. § 1332(d).

[7] As noted above, because this Court concludes that Plaintiffs lack Article III standing, it will not address the merits of their MCEMA claims.

G Ashely's argument in support of Article III standing was "not consistent with Plaintiffs' allegations[.]" (ECF No. 29 at 2). This matter is now ripe for review.

## STANDARD OF REVIEW

A defendant may remove any state civil case to federal court if the plaintiff could have originally brought the case in federal court. 28 U.S.C. § 1441(a); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 7–8 (1983). Thus, for removal to be proper, the federal court must have original jurisdiction over the case despite it being filed in state court. If "a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Franchise Tax Bd.*, 463 U.S. at 8 (citing 28 U.S.C. § 1447(c)). A defendant who removes a case bears the burden of establishing both that the federal court has jurisdiction and that the removal is procedurally correct. *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016) (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)); *see also* 28 U.S.C. § 1446 (removal procedures). And still, "[f]ederal courts have an independent duty to confirm their own jurisdiction even when . . . it initially went unquestioned by the parties." *Shaiban v. Jaddou*, 97 F.4th 263, 265 (4th Cir. 2024) (citing *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019)).

## ANALYSIS

Although Defendant G Ashley seeks to dismiss Plaintiffs' claims as insufficiently pled under Federal Rules of Civil Procedure 12(b)(6), this case presents a threshold question of Article III standing. Whether Plaintiffs' Complaint (ECF No. 9) establishes that they have suffered the requisite concrete injury to continue litigation of this action in federal court must

first be addressed. As the U.S. Court of Appeals for the Fourth Circuit has recently reiterated, "[w]here standing is in question, the federal court must decide the issue before reaching the merits of any claim presented" because Article III standing is a jurisdictional prerequisite to adjudication. *Pub. Int. Legal Found., Inc. v. Wooten*, 164 F.4th 362, 365 (4th Cir. 2026) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). As the Supreme Court has repeatedly emphasized, "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024); *see* U.S. Const. art. III, § 2, cl. 1. "The requirement that a [p]laintiff possess 'standing to sue' emanates from that constitutional provision." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018). As particularly relevant to Plaintiffs' claims, the Fourth Circuit held that "plaintiffs cannot establish a cognizable injury simply by pleading a statutory violation." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)); *see also O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 243 (4th Cir. 2023) ("The intangible harm of enduring a statutory violation, standing alone, typically won't suffice under Article III—unless there's separate harm (or a materially increased risk of another harm) associated with the violation.").

"A proper case or controversy exists only when at least one plaintiff 'establish[es] that [she] ha[s] standing to sue.'" *Murthy*, 603 U.S. at 57 (alterations in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Such standing ensures that a plaintiff has "a 'personal stake' in the case[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines*, 521 U.S. at 819). Article III standing exists where (1) the plaintiff "suffered an injury in fact that is concrete, particularized, and actual or

imminent;" (2) "the injury was likely caused by the defendant;" and (3) "the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan*, 504 U.S. at 560–61). The burden to establish standing lies with the party invoking federal jurisdiction. *Lujan*, 504 U.S. at 561.

At the pleading stage, "the court determines whether the allegations in the Complaint, taken as true, are sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and *Iqbal/Twombly*." *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 598 (D. Md. 2022) (quoting *Allah-Mensah v. Law Off. of Patrick M. Connelly, P.C.*, No. PX-16-1053, 2016 WL 6803775, at *2 (D. Md. Nov. 17, 2016)). If a federal court determines that it lacks subject matter jurisdiction over a case that has been removed from state court, the case must be remanded to state court. 28 U.S.C. § 1447(c); *Wells v. Johnson*, 150 F.4th 289, 308 (4th Cir. 2025). Thus, the Court must remand this case if Plaintiffs lack standing.

In this case, Article III standing hinges on whether Plaintiffs alleged a concrete injury in fact. "A plaintiff can show an 'injury in fact' when [she] suffers 'an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent.'" *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 268 F.3d 255, 263 (4th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)); *accord Lujan*, 504 U.S. at 560–61. Crucially, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo,* 578 U.S. at 341. "[A]n injury in law is not an injury in fact," *TransUnion*, 594 U.S. at 427, and a statutory injury does not inherently confer an injury in fact. *See, e.g.*, *Garey*, 35 F.4th at 921. Instead, a plaintiff alleging a statutory violation has an Article III injury only where she can show that she has been "*concretely harmed* by a defendant's statutory violation[.]" *TransUnion*, 594 U.S. at 427.

"[A]n injury is concrete if it is 'de facto'—that is, if it 'actually exist[s].'" *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 340). "Concrete injuries are not, however, limited to those injuries that result in tangible harm." *Id.* (citing *Spokeo*, 578 U.S. at 340–41). A plaintiff alleging intangible harm "under a statutory cause of action can establish a cognizable injury by 'identif[ying] a close historical or common-law analogue for their asserted injury' for which courts have 'traditionally' provided a remedy." *Garey*, 35 F.4th at 921 (alteration in original) (quoting *TransUnion*, 594 U.S. at 424). Here, Plaintiffs allege their claims pursuant to the statutory cause of action provided in the Maryland Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COM. LAW §§ 14-3001 *et seq.* As explained below, their alleged intangible harms are not sufficiently concrete to constitute an injury-in-fact cognizable under Article III. As such, this Court lacks subject matter jurisdiction, and this case must be remanded.

Here, Plaintiffs allege that Defendants sent them and other members of the putative class dozens of commercial marketing emails, "up to 6 per day," that contain "false and misleading information" about the duration of Defendants' sales and "clog up inboxes with spam and waste limited data space." (ECF No. 9 ¶¶ 21, 24). Specifically, they allege that the emails' subject lines included phrases such as "EXPIRING TOMORROW[,]" "LAST CHANCE," and "Ends TONIGHT[.]" (*Id.* ¶¶ 32, 35, 36). However, according to Plaintiffs, Defendants subsequently sent additional emails extending these sales even though the "'extension[s]' [were] preplanned." (*Id.* ¶¶ 28, 29, 33, 37–39). Notably, while Plaintiffs "would like to continue receiving truthful information from Defendants" about their products and promotions, (*id.* ¶ 68), they do *not* allege that (1) they were actually deceived by the emails; (2)

they relied to their detriment on any of the allegedly false subject lines by making a purchase they would not have otherwise made; (3) they spent any significant amount of time reviewing or deleting the emails; or (4) the emails were unsolicited. *See* (ECF No. 17 at 2, 7). Rather, they allege that these emails violate MCEMA because the "false and misleading . . . email subject lines . . . trick consumers into opening their email and making purchases," (ECF No. 9 ¶ 1), and thus "have the capacity to deceive" consumers. (ECF No. 17 at 7).

This Court has consistently found Article III standing lacking where, as here, plaintiff's only claimed injury is the receipt of allegedly false or misleading marketing emails in violation of MCEMA. *See Cowan v. Williams-Sonoma Stores, Inc.*, No. RDB-26-3073, 2026 WL 2945164 (D. Md. Oct. 1, 2026); *Dent v. Beis, LLC*, No. RDB-26-01170, ECF No. 38 (D. Md. Nov. 10, 2026); *Rossy v. Beis, LLC*, No. RDB-26-2119, ECF No. 28 (D. Md. Sep. 3, 2026); *LaTouche v. True Religion Apparel, Inc.*, No. RDB-26-00914, 2026 WL 2221402 (D. Md. Aug. 3, 2026); *Crooks v. Coty DTC Holdings, LLC*, No. RDB-26-0078, 2026 WL 1265422 (D. Md. May 8, 2026); *Carter v. Vineyard Vines, LLC*, No. ELH-25-3178, 2026 WL 1429258 (D. Md. May 21, 2026); *Smith v. Lane Bryant Brands Opco LLC*, No. SAG-25-3766, 2026 WL 1745684 (D. Md. Jun. 17, 2026); *Mulanena v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. JRR-25-3753, 2026 WL 1214932 (D. Md. May 4, 2026).

For example, recently, in *Cowan v. Williams-Sonoma Stores, Inc.*, No. RDB-26-3073, 2026 WL 2945164 (D. Md. Oct. 1, 2026), this Court considered facts nearly identical to those at issue in this case. *Compare Cowan*, 2026 WL 2945164, at *2, *and LaTouche*, 2026 WL 2221402, at *2, *with* (ECF No. 9 ¶¶ 21, 24, 28, 29, 32–39). Tellingly, this Court observed in *LaTouche v. True Religion Apparel, Inc.*, No. RDB-26-00914, 2026 WL 2221402 (D. Md. Aug. 3, 2026), that

where "a plaintiff in briefing or in a complaint disclaims any injury beyond mere receipt of emails that allegedly violate MCEMA, this Court has repeatedly determined that the plaintiff lacks Article III standing." *Id.* at *10 (citations omitted).

Defendant G Ashley's Motion to Dismiss did not address Article III standing. *See generally* (ECF No. 14; ECF No. 14-1). However, in its Reply, G Ashley contends that "there is Article III standing" because "Plaintiffs have alleged monetary loss[,]" which the Fourth Circuit has ruled "a quintessential injury in fact." (ECF No. 22 at 1–2 (citing *Penegar v. Liberty Mut. Life Ins. Co.*, 115 F.4th 294, 302 (4th Cir. 2024))). Alternatively, Defendant argues that Plaintiffs' allegations differ from the intangible harms, which were found insufficient for Article III standing, in cases such as *Crooks v. Coty DTC Holdings, LLC*, No. RDB-26-0078, 2026 WL 1265422, at *5 (D. Md. May 8, 2026) and *Mulanena v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. JRR-25-3753, 2026 WL 1214932, at *7 (D. Md. May 4, 2026). (ECF No. 22 at 3). The Court will address each argument in turn.

First, Defendant G Ashley's argument that Plaintiffs pled a monetary loss when they alleged that the subject lines "spurr[ed] consumers to make purchases in a hurry and thereby increase[ed] Defendants' sales revenue" is unavailing. (ECF No. 22 at 2 (citing ECF No. 9 ¶ 2; ECF No. 17 at 1, 13, 11)). Judge Hollander of this Court has found injury-in-fact lacking upon consideration of similar allegations that the receipt of emails "create a false sense of urgency and stimulate consumers to make purchases." *Carter*, 2026 WL 1429258, at *28, *30. Here, Plaintiffs disclaim injuries beyond receiving marketing emails with "false and misleading" subject lines in violation of MCEMA. *See* (ECF No. 9 ¶ 68 (clarifying Plaintiffs would still like to receive truthful emails from Defendants)); (ECF No. 17 at 7 (disclaiming

additional injury)). Thus, this Court's prior decisions direct that Plaintiffs did not suffer a concrete injury sufficient to confer Article III standing. *See Cowan*, 2026 WL 2945164 at *6–7; *Dent*, No. RDB-26-01170, ECF No. 38, at 8-9, 11; *Rossy*, No. RDB-26-2119, ECF No. 28, at 11; *LaTouche*, 2026 WL 2221402, at *9, *10; *Carter*, 2026 WL 1429258, at *1, *12–14, *17, *23–28; *Crooks*, 2026 WL 1265422, at *5–6; *Mulanena*, 2026 WL 1214932, at *6–7; *Asabre v. Retail Servs. & Sys., Inc.*, No. PWG-22-148, 2022 WL 4326536, at *2 (D. Md. Sep. 19, 2022).

Moreover, Defendant cites *Penegar v. Liberty Mut. Life Ins. Co.,* 115 F.4th 294 (4th Cir. 2024) to support that an injury in fact exists here, but this case actually supports the opposite conclusion. Defendant cites *Penegar* for the proposition that the Fourth Circuit considers monetary loss "'a quintessential injury in fact' for Article III standing[.]" However, in *Penegar*, the Fourth Circuit found that because the plaintiff had only been subjected "to the *risk* of monetary loss" rather than *actually suffering* monetary loss, the plaintiff "did not sustain an injury in fact" sufficient to confer Article III standing. 115 F.4th at 302 (emphasis in original). Like the *Penegar* plaintiff, Plaintiffs here have disclaimed that Defendants' emails caused them monetary loss. (ECF No. 29 at 2). In fact, Plaintiffs expressly deny that their past Ashley Stewart purchases were even induced by Defendants' false or misleading subject lines.[8] (*Id.*); *see also* (ECF No. 17 at 2). Defendant even concedes this in its Motion to Dismiss: "Plaintiffs do not allege that they themselves were misled or deceived by any of the emails they received." (ECF No. 14-1 at 3). Moreover, this Court has explained that Defendants may not "insert[]

[8] As Plaintiffs noted, the Fourth Circuit has clarified that "[i]n a class action, [courts] analyze standing based on the allegations of [personal injury made by] the named plaintiffs." (ECF No. 29 at 1 (citing *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017))). Though whether the purported class should be certified is beyond the scope of this Court's analysis, Plaintiffs, here, have not pled facts plausibly suggesting that *they* suffered a concrete injury sufficient to confer Article III standing.

[their] own allegations regarding Plaintiff's injuries" to establish Article III standing. *Cowan*, 2026 WL 2945164 at *6. Plaintiffs have disclaimed suffering any actual monetary loss, and Defendant's arguments to the contrary cannot change this.

Second, Defendant suggests that Plaintiffs' allegations differ from those intangible statutory harms in *Crooks*, 2026 WL 1265422, at *5 and *Mulanena*, 2026 WL 1214932, at *7, where the plaintiff "alleged 'no other harm' other than that the defendant sent emails with false or misleading subject lines." (ECF No. 22 at 3). Defendant contends Plaintiffs' harms here are distinguishable from those cases because Plaintiffs suffered monetary loss from the misleading emails which spurred consumer purchases. (ECF No. 22 at 3); *compare Crooks*, No. RDB-26-0078, ECF No. 6; *Mulanena*, No. JRR-25-3753, ECF No. 3, *with Thompson v. Ashley Stewart, Inc.*, RDB-26-1800, (ECF No. 9 ¶ 2). Even so, the allegation of "spurring consumers to make purchases," is not sufficient to plead an injury in fact. *LaTouche*, 2026 WL 2221402, at *6. In *LaTouche*, plaintiff's complaint also asserted that similarly false and misleading email subject lines "impart[ed] a sense of urgency and induce[d] fear . . . spurring consumers to make purchases in a hurry and thereby increasing Defendants' sales revenue." *LaTouche*, No. RDB-26-00914, ECF No. 2 ¶ 2. This Court found those allegations did not plead facts to support that plaintiffs suffered a concrete injury for Article III standing. *LaTouche*, 2026 WL 2221402, at *6 (citing, *inter alia*, *Carter v. Vineyard Vines, LLC*, Civ. No. ELH-25-3178, 2026 WL 1429258, *28, *30 (D. Md. May 21, 2026)).

In sum, Plaintiffs' Complaint alleges statutory harm alone without any concrete harm. Defendants have not met their burden to show that Plaintiffs have suffered a concrete injury in fact as required for Article III standing. Thus, this Court lacks subject matter jurisdiction,

and this case must be REMANDED to the Circuit Court for Baltimore City, Maryland. *See Wells*, 150 F.4th at 308; 28 U.S.C. § 1447(c). Defendant's Motion to Dismiss (ECF No. 14) is DENIED AS MOOT.

**CONCLUSION**

For the reasons stated above, it is this 13th day of November 2026, hereby ORDERED that:

1. This case shall be REMANDED to the Circuit Court for Baltimore City, Maryland;
2. Defendant's Motion to Dismiss (ECF No. 14) is DENIED AS MOOT;
3. This case shall be CLOSED; and,
4. The Clerk of Court shall transmit copies of this Memorandum Order to counsel of record.

/s/
Richard D. Bennett
United States Senior District Judge